And we'll turn to Constellation Brands against NLRB and Teamsters Union 601. Shai Voretsky May it please the Court, my name is Shai Voretsky with Jones Day representing Constellation Brands. The board here approved a bargaining unit that fractured a job classification. It did so without explaining why that makes sense for purposes of collective bargaining, which is what the National Labor Relations Act requires the board to do. All of the employees in outside cellar and in barrel share a job classification, cellar operator, and that job classification reflects a job function, turning grapes into wine, that is unique to them. No other employees in this winery, in any other department, share that classification or do that same work. Well they turn grapes into wine, but they do it in different ways, correct? They do it, one does it through the cellar, in the cellar operation and then there's a barrel operation and different treatments are accorded to the fruit of the vine in either cellar. They do it in a different context. So wasn't the board within its right to exercising its discretion to toad up the factors and to find that there was significant differences, there were significant differences between this group of cellars, outside cellars, and the cellar people and the others? No Your Honor. Your Honor, first of all on the fact, you're correct that the fundamental distinction between the outside cellar employees and the barrel employees is that the outside cellar employees turn wine into grapes using large tanks and the barrel employees turn wine into grapes using barrels. Right. That's the fundamental distinction. However, they have the same skills and qualifications, they use the same tools, they perform the same tasks and so it's just this one distinction about where they perform their work. What the board failed to do, although it pointed out the fact of that distinction, it didn't explain why that distinction bears on collective bargaining, especially when everything else about the employment of these two groups is so... For one thing, there's a graveyard shift for the outside cellar people and not for the barrel people. That's a term of employment that is normally, presumably, subject to bargaining and that would be a difference. That's one difference. Right. Of course, there are also overwhelming similarities, but even with respect to that difference, even granting that difference... There may be similarities, but they're different, they work in different areas, all right? I mean, they report to different supervisors, they work in separate areas, they don't intermingle that much. I mean, there's some evidence of getting together for special projects, I suppose. The function, as we've discussed, is different. There's a graveyard shift and they don't... I think there was a finding by the board that they don't intermingle, and in an area where the board really is given such wide latitude to make these decisions, to find that... You agree that it's not a de novo review, I mean, we don't sit as a super board here. There's a deference that's accorded to the board. The board, of course, gets deference, but what the board has to do in order to exercise its deference properly and in order to enable meaningful judicial review, which is not just a rubber stamp, the board has to do more than list these differences. The differences that the board found, I'm happy to discuss on the facts, but before even getting into that, I think the fundamental point here is that the board can't simply say, well, there are factors one through three that are similar, and there are factors four through six that are different, and the differences outweigh the similarities, therefore we're going to break apart this job classification and recognize a unit. What the board has to do is it has to explain in the way that your honor was starting to do, although I can explain why I disagree with the conclusions you were drawing, but the board has to explain in the way that your honor was trying to do, why these differences might actually bear on collective bargaining, and why these differences, if they bear on collective bargaining, are more significant for collective bargaining than the similarities. And that's what the board failed to do. What it did was it identified factual distinctions. Again, I'm happy to get into... So what is the relief you're seeking here? Remanded the board to take another shot and see if they can tie these to specific collective bargaining concepts? At a minimum, what we're asking for, yes, is for our petition for review to be granted and the case remanded to the board, for the board to consider whether in fact this fractured unit is appropriate in light of whether these differences actually bear on the purposes of collective bargaining, which is what the board is supposed to determine under the act. And you would want... The decreto language that you would want is a little bit more elaborate than that, right? You would want this to indicate precisely what standard should be used, or maybe I'm getting ahead of... What is it that you really want from us? Beyond the simple denial of the petition for review or granting the petition for review denial of the board's petition. Well, of course, ultimately we want the conclusion, whether from this court or from the board, that this particular unit cannot be justified. But at a minimum, what we would ask... So let's just stay right there for a moment. So you would want this court, I guess for the first time, to deal with the specialty health care precedent. Is that right? No, I don't think that you need to go that far. If, of course, the court wants to discuss specialty health care, we believe that specialty health care is wrong, and I'm happy to talk about that. But a simpler, narrower way to resolve this case, which we would ask for, is for the court to say, regardless of specialty health care, what the board has done here is it has failed to engage in reasoned decision-making. It didn't really explain the significance of these distinctions. And your view is that the distinctions, in any event, are immaterial. They're small. Right. So suppose they did that, and it goes back, and the board revisits it, and then they come up with their reasons, whatever they may be, and they say, in any event, the company did not establish an overwhelming community of interest that is necessary to overcome the And then aren't we faced with specialty health care? I think it would depend on how the board wrote its opinion. It may very well be that if the board reaffirms this same opinion, and the reason that we lose the specialty health care standard is dispositive, we may well be back here and at that point raising specialty health care. But you don't need to reach that issue today. All we're asking you to do, all you need to do to resolve this case today, is to hold that the board has not explained why these factors, as they relate to collective bargaining, justify the recognition of this fractured unit. Let me ask you a threshold question, kind of a general administrative law question. Your brief does not mention Chevron, although your opponent, the board, does, of course. What are we to make of that? Would you agree with the board that its interpretation of the act is entitled to Chevron deference? Its interpretation of the act as embodied in specialty health care is entitled to Chevron deference. I think it fails under Chevron deference, but it is entitled to Chevron deference. What I'm urging here today, though, and we've urged in our brief as well, is that the court doesn't need to reach that question. It can resolve this without answering whether under Chevron specialty health care is permissible because the board has not engaged in reasoned decision making. When you say the board, you're including the regional director's decision, is that correct? Or are you saying that the board should have said more than it did by way of summarily affirming that decision? So the decision, I think, that's ultimately before you on review is the board's decision. Of course, the board's decision is largely a summary affirmance of the regional director's decision. And so for the reasoning, we look at the regional director's decision. I want to clarify that. So you're saying that the regional director in that decision really didn't do enough to explain the significance of the decision? And the board didn't fix that when it had the opportunity to do so on our petition for review today. It's a very good question that Judge Laurier asked about the use of the word board, because I've always been fascinated by the fact that the term the board, as used in the NLRB, refers to two or three different decision-making entities. So we're supposed to defer, in effect, to the regional director's determination of what the act requires. I think it's very similar to an ordinary civil case. If you had a magistrate judge that issued a report and recommendation and the district court didn't add any additional analysis, but simply adopted it, you'd be reviewing the district court's opinion. But the operative document, the findings that we have come from that. Have we ever required? What you're saying, in effect, is that it is an error, per se error, for the NLRB to say nothing more than that the employees here share a community of interest. So it needs to say more than that. It wouldn't be, per se, error if the opinion that they were adopting from the regional director contained the necessary analysis. So give me an example of the necessary analysis that it could have engaged in that would have satisfied Constellation Grants. Well, I can't give you an example of an analysis that would justify this particular unit, but if, hypothetically, the board, the regional director and the board had approved a unit larger than the one that was approved, one consisting of the entire seller operations department, the analysis might well have been these employees all share a job classification. They all do the same kind of work. They're on the same pay scale. They have the same terms and conditions of employment in terms of the same company handbook that they're subject to and that sort of thing. And as courts have recognized and as the board has recognized, these are the fundamental subjects of collective bargaining. These are the things that are most important for collective bargaining. Now, they also share certain similarities with others at the plant, with other departments. And, of course, Constellation argued before the board – Constellation argued before the regional director as an initial matter that even a wall-to-wall unit is what should be recognized. And so they do share similarities with others. However, the board could distinguish why there are more fundamental differences between, say, production – between maintenance employees and the seller operations unit because the maintenance employees do fundamentally different kinds of work. They're hired differently. They have different skills. There are different things that they need to bargain over. They're subject to a different pay scale. And those are things that both give them a distinct identity in the other groups and, in addition to having a distinct identity, give them something fundamental to bargain. You're asking us, in effect, to require the NLRB and the regional director to mouth certain specific words to satisfy ourselves that it engaged in that analysis. But can we now look at the record itself and say that there was substantial evidence to support a distinction even though the NLRB didn't specifically go through the analysis that you wanted it to go through by way of explaining these – the relevance of the distinctions that it outlined? So, first of all, I don't think that it's mouthing specific words. I think it would actually be an analysis of whether the similarities and differences there are highly likely. So answer the second question. As for the second question, I don't think that appellate courts typically make up justifications for agencies. Typically, agency actions are judged based on the justification that the agency has offered. If the agency hasn't offered a justification that withstands the level of review that the APA requires, then the appropriate course is not for this course – for this court to make up a rationale for the agency. It's for the agency to articulate it. I have a practical question. Let's assume that the bargaining unit is the smallest – is the small one that's – that was approved. Wouldn't the company have to conform terms and conditions of employment of the rest of the seller operations people who are not included in that bargaining unit to the ones that were included in the bargaining unit? You couldn't have different pay for different people operating with you. I mean, there would be the difference about the graveyard ship, but all the other terms are – you're saying are similar. I think you might well have different pay for different people, and that's precisely one reason why it's inappropriate to split up this kind of a unit, because it's putting the company and the employees in an untenable position, potentially, of having some people bargaining over wages in terms of conditions of employment and others not subject to the same conditions, even though they're doing the same kind of work in an adjacent location at the same plant. So what were you saying? If there were different – if there was different pay as a result of this, there'd be worker unrest because some people are getting paid more, the union people are getting more than the non-union people, that kind of thing? I'm just trying to think of a practical – That's an example. The adverse practical consequences from the company's position in terms of managing the other employees, managing its employee workforce. So it could certainly lead to unrest. It can lead to disruptions in the production process if, for example, wine needs to be transferred from tanks to barrels, and the hours are different and they're not aligned, or there are particular restrictions on what tasks certain employees can perform. It creates all sorts of coordination difficulties between those workers who are subject to these bargain terms and conditions and those workers who are not. It's entirely appropriate for the board to take that kind of consideration into account when it's deciding what unit of workers to unionize, and it wouldn't be appropriate for this court, in the first instance, to review the record and provide reasons that the board hasn't provided for what would work in the context of this particular employer. So your position here is that basically the union came in with a proposal, the board kind of endorsed it, but didn't give reasons why in terms of the purpose of a collective bargaining. Correct, Your Honor. You've had some extra time, but we're delighted to see you, and we'll give you two minutes in due course before we vote. Mr. Loro for the NLRB. Yes. Good afternoon, Your Honors. May it please the court, Greg Loro for the board, asking the court to enforce the board's order because its unit determination is reasonable. I want to begin by noting that while my opponent suggested that perhaps the court doesn't need to address the reasonableness of the rule, I also want to point out that we've had developments since briefing was finished in this case, and we now have three additional circuits that have approved the rule, the specialty health care analysis, and in doing Why don't you start by addressing his argument that the regional director, with the gloss of the NLRB's summary affirmance, failed to adequately explain the relevance of the distinctions between the cellar department employees and the barrel department employees. Thank you, Your Honor. I disagree with my opponent's view. I think the regional director did a lot more than just list the factors. He explained them, and he detailed the similarities of the unit employees and their differences with the other employees. For example, he noted my opponent's argument that was also made to the regional director in the hearing that there's common supervision at a higher level, but the regional director explained that's offset by the other differences we have here, including distinct immediate supervision, and it's those direct supervisors who actually interact with the employees. Another example. But apart from that, your adversary is not challenging that, not making that argument. The argument he's making is that there wasn't an analysis of how the unit effectuates the purposes of collective bargaining as it's structured or as it's approved by the board. Well, the standard is that it furthers collective bargaining if the employees are grouped together in an appropriate unit. It doesn't have to be the most appropriate unit. And so in order to make that finding, of course, the board applies the traditional community of interest factors like it did here. It found that these employees are in a separate department with separate supervision, with a distinct role in the winemaking process. The employees testified, we work together in pairs, meaning the outside seller employees. We don't work with barrel department employees. And although the employer said, ah, but there's opportunities for collaboration, or in theory, we view these employees as interchangeable, there was very little record evidence of that happening, of there being any interchange or contact. So really, I guess the argument is that just by laying out the distinctions and then saying that there are, at least with respect to these units, there's a community of interest with respect to the seller department employees. And that's not to say that there might not be larger communities of interest that include or incorporate the barrel employees. That's enough. Well, the analysis is that these are the factors that, under settled law, can support a separate unit. And the court has agreed that these are the factors, again, by explaining how these employees are in a separate department. If those factors have no meaningful impact on the bargaining process that is different from a unit that would include the barrel people, how can that be justified? Well, the issue, again, on what the community requires. Well, you're just saying, let's go back to community of interest and not really relate it to the purposes of collective bargaining. And maybe that's what the board did. That's what your adversary is arguing about. Well, what I'm saying, Your Honor, is the act doesn't tell the board how to determine whether a unit is an appropriate unit for collective bargaining. But it is settled under law that there's a series of community of interest factors. And the board applied them and analyzed them here. Now, once the board finds that that test has been met and that this is an appropriate unit under the community of interest factors, it's the employer's burden or the party challenging the unit's burden to show that the unit was essentially utterly inappropriate, that there's such an overwhelming community of interest with the excluded employees that the unit can't be right. My point being, to answer your question, that under settled law is how you determine whether the unit is appropriate for collective bargaining. That's the analysis. So the settled law is the overwhelming community of interest test in terms of trying to overcome the board's decision? It's that framework. That's the framework. Isn't that the specialty health case? Yes. That is the analytical framework for determining whether a unit is an appropriate unit for collective bargaining that has now been approved by six Cisco circuits. So community of interest and the burden has shifted to show overwhelming community of interest. Yes. With the excluded employees. Yes, with the excluded employees. And I submit, Your Honors, that particularly given the deferential standard of review, the fact that it only has to be an appropriate unit, so even if other considerations could support the larger unit, that's at no moment. And in light of the detailed analysis in the regional director's findings, that this unit should be approved. It did more than just list the factors. He considered every argument our opponent made, that there's common supervision, functional integration. He said, yes, that there's separate direct supervision and that functional integration, generally, that they all make wine, is offset by, as you noted this morning, their distinct role in the process. Going quickly to the Chevron question. Yes, Your Honor. Which perhaps we don't have to reach at all, but I'm interested in this question of the regional, the deference to the regional director. I guess that must be well settled by now, that the regional director, the decision of the regional director is the decision of the board for purposes of Chevron. That is correct, whereas here, the board adopted the decision by rejecting a request to review it. That is correct. Unless Your Honors have further questions, I thank the Court for its time. Good afternoon, Your Honors. Matt Ginsberg on behalf of Teamsters Local 601. I want to pick up on some of the issues and arguments raised by Constellation Brands, by our opponent. First, this circuit's law, and we quote this at page 20 of our brief, is that in applying the community of interest test, a strong showing on just a few of the factors may suffice to sustain the board's decision, which is entitled to considerable deference on such matters. That's Hartshare Human Services quoted and cited in the brief, and there's also some other cases from this circuit and other circuits holding the same. And I don't want to just cite that to you. I want to explain to you why that makes sense. The community of interest test, which has long been a part of the board's decision-making process in these unit determination cases, looks at the factors that are important for collective bargaining. They didn't just pick those factors out of the air. They're factors that, through the board's long experience, they've determined are key to determining whether there can be an effective collective bargaining relationship. And if you read those factors, and here I'm reading from the block quote in specialty health care, which, again, we quote in the brief, the employer agrees is the correct test, and the regional director applied here. It's, you know, the separate department, distinct skills and trainings, distinct job functions, perform distinct work, the amount and type of job overlap between classifications, functional integration. So I asked Mr. Beretsky, posting counselor, whether we could just review the evidence, the record, and determine that there was sufficient evidentiary support for the NLRB's decision. And he said, no, we can't really do that. And you're telling us that in Onyx and in Hartshare, we did precisely that. Uh, I don't believe that is, in fact, what you did in those cases. I think what you did in those cases is looked at the board's decision, which was, I don't know if that was the regional director's decision or if the board added anything in those particular cases. And in the front of an employer's argument, much like that made by Mr. Deporetsky, said, sure, it's the case that not all the community of interest factors point in the same direction in this case, in Hartshare. Nevertheless, we defer to the board's finding that this is an appropriate unit for collective bargaining, because the board has applied the factors and said, you know, that a number of the factors point in that direction. And that's enough for the board, given its expertise in these unit determination matters. And therefore, we shall defer. Um, again, the key... So as long as the NLRB goes through the factors and makes a determination based on having assessed those factors, um, that this is an appropriate bargaining unit, that's, that's all we need to see. Yes, Your Honor, that's correct. And, and, uh, you know, as, um, I lost my train of thought there. As Mr. Lara was describing, those factors do, in fact, point in the direction of this being an appropriate unit. And what's important to understand in this context is that the statute itself, Section 9B, which, again, we quote in, in the brief, uh, and the Supreme Court's jurisprudence says there's more than, there can be more than one appropriate unit in any given workplace. And so what the board is looking at is whether the petition for a unit is an appropriate unit, which means that, you know, in, there's, there's a lot in the statute itself that talks about, uh, plant units, it talks about craft units, it talks about subdivisions of plant units. And so, uh, it's not always going to be the case that every community of interest factor points in the same direction. It's the board's responsibility to evaluate those factors in light of the record evidence and make a determination that enough of them do to make sense for collective bargaining. And when the board does that, as the board, the regional director did in this case, uh, it's entitled to substantial deference under the Supreme Court's jurisprudence and this Court's jurisprudence. If I may have just one additional moment, uh, I just wanted to say on behalf of the union that there's real common sense to the bargaining unit determination that was made here. These employees, these seller employees, work outside with huge, huge tanks of wine. They're, they're producing the vast majority of the product that's produced at this, at this vineyard in 265,000 gallon tanks of wine. That's much... I understand the fundamental difference really is that there are workers who are working outside in the hot sun, and there are other workers who are inside. Right. Their work, their work is outside in the hot sun with 45 foot tall tank, tank farms filled with tanks big enough to fill an Olympic sized swimming pool, making wine in mass quantity, crushing the grapes, taking it to the bottling department. They're the only ones to do that. They're the only ones who are making wine. The barrel department folks are inside. Temperature, temperature controlled facility, traditional oak wood barrels. The testimony from the general manager is they bring all the tour groups there because they like to see the wine barrels. It's a different group, and it makes sense that there's separate supervision that the tank farm folks who are doing most of the production work on three shifts. The barrel people are... You don't disagree that an appropriate bargaining unit could have included both groups, but... Right. And, and the regional director to his credit, even though the employer did not make this argument in five days of hearing, which is part of the reason that the regional director's the other departments which are not being raised here today, to his credit said, look, you could put the barrel department employees together. That would be an appropriate unit too, but that's not my task. Under the statute, under the Supreme Court jurisprudence, I'm to decide whether this is an appropriate unit, one appropriate unit in this workplace, and he correctly determined it was. So that's very considerable discretion given to the regional director, right? Well, the board, the board reviews these determinations, and sometimes, as in this case, they found the regional director had done all that needed to be done. There certainly are cases where the board will change, reverse the regional director. Let me ask you a slightly different question. Why, but to follow up on Judge Laurier's perspective or question, why would you prefer to organize a unit composed only of the outside seller employees? That is, what's the, I recognize your argument that either of these would be appropriate under the act, but why would the union prefer this? I assume it must be that you're comfortable in believing that you'll win that election, right, with a smaller unit? Is that obvious? It, just like the appropriate unit inquiry varies from workplace to workplace, the answer to that question varies from workplace to workplace. In this case, this group of employees, the seller department employees, came to the union and said, look, we work together. We, you know, we're, we all have common interests. We're the ones who want to organize. We think we're a separate group. And the union and its lawyers did an analysis to say, yes, we think under the law you are and you ought to have the right to organize. Why wouldn't the union want to have more members if they could win the election, including the barrel pool? Well, I mean, including the barrel, in this particular case, that wasn't the group of employees who wanted to organize. I understand that. I, well, I mean, the, the, the. You're thinking that you basically, that you wouldn't have gotten, the vote would have been closer. I, I, I was not the lawyer on the ground. I can't say, I can say we won this election very easily. It's in the record 31 to 13. It's very well possible we could have won an election with a larger group as well. Were there any ethnic or other differences between the barrel and cellar department? I'm not aware of any, and I'm not aware of that being in the record either. But, but I'll tell you as a general matter that whether or not our unions petition for larger or smaller units is very fact dependent. And sometimes, although it seems like a union would always want to represent the larger group, that's not always the case. Sometimes our unions have expertise in representing particular groups of employees. Sometimes we feel that the conflicts of interest, not legal conflicts. Apparently the barrel department employees are not unionized. Is that separate? That's correct. Are they paid the same? They are, they are, they are within the same pay band and the records. Now, constellation, if I'm, if I'm correct, they would wish to give you the treat of having a larger unit. They want to help you have more members. Why wouldn't you accept this kind offer? Well, again, because we, we were approached by and decided to work with the group of, of the cellar employees. And also, again, I'll say at the time when these decisions were being made before the regional director, constellation was arguing that the unit had to include all of the production employees. And we were not interested in that. And so the election took place. Which goes back to Judge Lawyer's question about why that would be so that, that is, is there something that, what's the difference between these two groups? In fact, ethnic and anything else. Are there any other factors which, which distinguish these two groups? You mean outside of the community of interest?  No, not that I'm aware of. It's a very broad, amorphous term. Well, I, I've tried to explain to you the practical realities of how they really are separate groups. Well, I'm thinking now that after this description anyway, of the hot sun, that being, being a barrel employee is a better job. You don't have to pay the same. It's a better job. I, although I have no basis to say so, I understand your point. Unless you happen to like sweating in the hot sun. Right. And it's a temperature, temperature controlled warehouse that, that air conditioning. Thank you. Thank you. All right. We'll hear from counsel for the employer. Two minutes, Max. Did I butcher your name? No, you got it. You did pretty well. If I could, I'd like to make one legal point and clarify a few things about the facts. Legally, simply reciting the community of interest factors can't be enough. Because if you look at both this court's precedents and the board's own cases, the community of factors, the community of interest factors point all over the place and are used to justify different conclusions in different cases. The board itself. But then some knowledge that the factors, you know, some factors go against, uh, uh, recognizing this unit as an appropriate unit. Others do, uh, uh, uh, go, uh, in favor of that and weighing the factors. Isn't that what, what the NLRB and the regional director is supposed to do? Absolutely. But weighing the factors with an explanation of why weight is given to particular factors with reference to the statute that's being implemented. Otherwise, you end up in a situation like what we have here, where there are board cases in which separate supervision has, the board has expressly said that's not enough to justify a separate unit. This court has said that just geographical separation, working inside versus outside, is not sufficient. This court has said that a mere departmental label, if it doesn't actually reflect a meaningful difference, is not enough. Of course, but there are a bunch of different factors in this case that the, uh, board, uh, and the regional director pointed to as favoring this, recognizing this unit as an appropriate unit. But, but it's not simply a matter of arithmetic and adding up the factors and saying there are a bunch of factors here and there are more over there. You're, the, a meaningful weighing of the factors in a way that is fair to the employer and to the union. Tell us about that meaningful weighing of factors. Give us an example. You were given that opportunity before by one of my colleagues, but you didn't wish to be presenting your opponent's position. But give us an example of what it is that the regional director or the board might have done, which would have been consistent with your view of the law. Um, again, it's a difficult question for me to answer because what you're asking me to do is to justify the smaller unit that we don't want and to give a roadmap for the board for how to do that. The very specific type of argument, which is that the, with all these factors, they extra factor, so we're asking you to do that for us. So, so let me, let me take a different example. I'm not arguing against my client, but I think I'll answer your question about methodology. Say you had an auto dealership and the employer comes in and says, I want a wall-to-wall unit. I want all the salespeople, all the service advisors and all the mechanics in the same unit because you know what? We're all here to serve customers and it's a common mission and it makes sense to have everybody be in the same unit. And the union comes in and says, yeah, there are some commonalities. You all have the same employee handbook, but being a mechanic is a fundamentally different task requiring different skills and training and hours and working conditions and pay scales than being a salesperson. And all of those things that the mechanics do differently that are unique to them, that's really what they're going to bargain over. And it's true that there are some similarities. And so some community of interest factors in this car dealership favor a wall-to-wall unit. But I think the board in that situation could reasonably say... So why isn't the tipping point here that these seller department employees have a fundamentally different job? They're outside doing different things. And so that's the community of interest right there. First of all, that's not what the board said. It didn't say they had a fundamentally different job because of that. Second of all, it didn't say that because of that, that bears on what they're going to bargain over. And third of all, that's also not true. The barrel employees, this is in the record, do go out into the tank farms. They need to build lines in order to transfer the product from the tank to their barrels. There's testimony in the record cited in our brief that the barrel employees go out into the tank farms to work on some of the same types of wine as the outdoor seller employees. They work on toasted head chardonnay along with the outside employees. So it's not factually correct that there is this clean division between inside work and outside work. But even if it were factually correct, the board would have to justify that with reference to collective bargaining. Now, hold on a second. I mean, I know we're coming around to the same question over and over again. But to put it another way, why do you want, why is it in your client's interest to have a larger unit? I think this also goes to some of the questions that you were asking the unions about why they want a smaller unit. It's all terribly abstract. I mean, obviously, is it not the obvious answer? But to be very crude about it, that you can win with a larger unit, you would have a better chance of winning the election. Well, and what I understand happened in this case, I wasn't involved at that level. But what I understand is that the union started out exploring the possibility of the larger unit and couldn't get the employees to support that. And so they went for the small unit. So they picked the unit they could win. And you picked the unit you could win, right? Whether we would win it or not, I don't know. Or you think you could win. Now, but I'm sort of wondering, why exactly is that? That is, we still don't understand what is it about these employees that makes it, that that this larger unit will give you a victory in the election and leaves your adversary to believe that the smaller unit will give them the victory. So I think the only thing that I can tell you about that is that the experience on the ground is that this is what the union found when it went in and initially started to try to organize the larger unit, is that that wasn't going to happen. Temperature control. Why that is, I can't tell you exactly, but it wasn't going to happen. The last one, may I make one more, with, of course, indulgence. 30 seconds, maximum. 30 second point. My opponents referred repeatedly to the outside seller employees as being in a separate department. They are not in a separate department. The organizational chart of Constellation makes clear that there is a single seller. Everybody described a seller, but not everybody, but there's enough testimony that people describe on the ground, a seller department and a barrel department. I think people colloquially interchangeably use terms like department and group and subgroup, but as far as actually departmental. There are different supervisors, but there's a general manager over everybody. There is a general manager for the department that everybody reports to. Seller operations. Correct. Correct. The seller operations applying consistent criteria. Thanks very much. Thank you. We'll reserve the seat.